IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

TKC AEROSPACE, INC.,

                Plaintiff,

     vs.

CHARLES TAYLOR MUHS,

                Defendant.

No. 3:11-cv-0189-HRH

O R D E R

Motion for Summary Judgment and Sanctions

Plaintiff moves for summary judgment or in the alternative for sanctions.[1] This motion is opposed.[2] Oral argument has not been requested and is not deemed necessary.

Facts

Plaintiff is TKC Aerospace, Inc. (TKCA). Defendant is Charles Taylor Muhs.

TKCA, an Alaska Native Corporation 8(a) contractor, specializes in aircraft procurement and leasing and aerospace logistics support and professional staffing for

---

[1] Docket No. 286.

[2] Docket No. 292.

-1-

government and private concerns. Muhs was employed by TKCA as its Vice President of Business Development. During Muhs' employment, TKCA supplied six Dash 8 aircraft to the Department of State (DoS). Muhs was significantly involved in all six Dash 8 sales.

In March 2011, Muhs resigned his employment with TKCA to begin working for Knowledge International. Muhs later agreed to continue to work part-time for TKCA. During this general time frame, Muhs learned that there might be another DoS Dash 8 solicitation. Muhs began working with Phoenix Heliparts, Inc. (PHP) to find aircraft and develop a bid for this possible solicitation. After the DoS issued the solicitation, Muhs continued to help PHP and PHP eventually was the successful bidder. TKCA was unable to submit a bid because it did not have an aircraft to propose and because by the time the bid was due, it knew Muhs was working with PHP.

On September 26, 2011, TKCA commenced this action. TKCA asserted seven claims against Muhs in its complaint: 1) breach of contract, 2) breach of the implied covenant of good faith and fair dealing, 3) breach of fiduciary duties, 4) unjust enrichment, 5) interference with prospective business relationships, 6) fraud, and 7) misappropriation of trade secrets. TKCA also moved for a preliminary injunction,[3] which was granted on

---

[3]Docket No. 7.

October 14, 2011.[4] The preliminary injunction generally enjoined Muhs from assisting PHP with the Dash 8 solicitation.

On October 20, 2011, TKCA commenced an action against PHP in Arizona State court. Although filed later, the Arizona Action progressed far more rapidly than this case.

On February 21, 2012, Muhs moved to stay this case pending resolution of the Arizona Action.[5] At this time, Muhs was represented in this matter by the same counsel that was representing PHP in the Arizona Action.[6]

In the memorandum in support of his motion to stay, Muhs stated that the Arizona Action "involve[d] the same plaintiff ... and [the] same factual and legal issues as those in the Alaska Action" and that "[t]he underlying factual allegations in the respective Verified Complaints in the two actions are virtually verbatim, the gravamen of the claims are identical, and the relief requested is virtually identical."[7] Muhs further stated "this pending action is so substantially similar to and significantly parallels the Arizona Action [as]

---

[4]Docket No. 43.

[5]Docket No. 61.

[6]Muhs avers that he "was never fully advised of the conflict of interest, the risks of joint representation and never signed a written waiver." Declaration of Charles Taylor Muhs at 4, ¶ 18, Exhibit 1, Defendant's Response in Opposition to Plaintiff TKC Aerospace, Inc.'s Motion for Summary Judgment, Docket No. 292.

[7]Memorandum of Law in Support of Defendant's Motion for a Temporary Stay at 2, Docket No. 62.

reflected in the overwhelming overlap of TKCA's factual and legal arguments in the Arizona Action Preliminary Injunction ('PI') Hearing Brief and its Summary Judgment ('SJ') Motion Brief in this court – the fundamental linchpin of both being the alleged wrongdoing of Muhs."[8] Muhs stated that it was "a distinction without a difference" that he was the "sole defendant" because "TKCA's claims of wrongdoing by PHP are entirely based on the alleged wrongdoing of Muhs."[9] Muhs also pointed out that "all parties in the two cases have entered into a stipulation and agreed that any discovery and trial testimony from the Arizona Action can be used as evidence in this case," which Muhs suggested was further evidence of "the substantial similarity between the two cases...."[10] In his reply brief, Muhs stated that "[a] resolution of the Arizona Action in TKCA's favor will dispose of any remaining liability and damage questions in the Alaska Action (again, but for the $20,000 wage claim)."[11] Muhs also stated "[i]f TKCA prevails in the Arizona Action, ... then Muhs would be collaterally estopped from arguing differently in this Court."[12]

---

[8]Id. at 8 (internal citations omitted).

[9]Id. at 9.

[10]Id. at 10, n.4.

[11]Reply Memorandum of Law in Support of Defendant's Motion for a Temporary Stay at 9-10, Docket No. 75.

[12]Id. at 6, n.3.

On March 8, 2012, the court denied Muhs' motion for a stay.[13] In doing so, however, the court observed that "Muhs' relationship to TKC[A] and his conduct as regards PHP is the keystone to all of the claims of substance in both the Alaska federal suit and the Arizona state suit."[14] The court also observed that

> it is reasonably clear that the Arizona litigation will not necessarily resolve the whole of this litigation. That said, the Arizona litigation has the prospect of materially affecting this litigation. Because Muhs' conduct is at the heart of all the claims in this court and in Arizona, there is the prospect for substantial duplicative litigation even though the defendants in the respective cases are different.[[15]]

On May 2, 2012, TKCA and Muhs filed simultaneous motions for summary judgment.[16] All of the evidence offered in support of the motions for summary judgment had been developed in the Arizona Action as no discovery had yet taken place in this case. On January 17, 2013, the court denied TKCA's motion for summary judgment and granted Muhs' motion in part.[17] Muhs was granted summary judgment on TKCA's unjust

---

[13]Docket No. 76.

[14]Order re Motion for Stay at 2, Docket No. 76.

[15]Id. at 4.

[16]Docket Nos. 85 and 91.

[17]SEALED Order re Motions for Summary Judgment at 53, Docket No. 195.

enrichment claim and fraud claim and on portions of TKCA's breach of contract and trade secrets claims.[18]

The court thereafter deferred any further scheduling in this case until the Arizona Action was completed. The proceedings in the Arizona Action were finally completed on January 30, 2015. The Arizona court concluded

> that PHP misappropriated TKCA's bid proposal, [Statements of Work] and labor rates in violation of the [Arizona Uniform Trade Secrets Act]. PHP profited from its misappropriation to TKCA's detriment and is ordered to pay TKCA the sum of the profits TKCA would have received under the DoS contract.... It is further ordered that PHP pay TKCA the calculated research and development cost[s].... It is further ordered that PHP pay exemplary damages pursuant to A.R.S. § 44-403(B) in an amount double awarded to TKCA for its lost profit and research and development costs. In addition, with respect to the common law claims, TKCA is awarded its lost profits and punitive damages.... It is also ordered that TKCA submit its applications for the amount awarded in sanctions (reasonable fees and expenses) and for reasonable attorney's fees pursuant to A.R.S. § 44-404 and A.R.S. § 12.349.[19]

The Arizona court's conclusion was based on findings that Muhs worked with PHP to compete for the DoS contract, that Muhs provided TKCA documents to PHP, and that

---

[18] Id. at 53-54.

[19] Under Advisement Ruling at 59, Attachment A, Authenticating Affidavit of Peter Scully, Docket No. 288.

Muhs worked on PHP's DoS Dash 8 proposal.[20]  The Arizona court entered judgment against PHP in the amount of $20,295,782.58.[21]

TKCA now moves for summary judgment on all of its remaining claims against Muhs on the grounds that Muhs is collaterally estopped from relitigating TKCA's claims against him.  In the alternative, TKCA moves for entry of a default judgment as a sanction.  TKCA also moves for an award of attorney fees and costs.

## Discussion

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

"For an issue in a separate action to have preclusive effect under the doctrine of collateral estoppel, the party against whom the issue is being asserted must have been a party to the earlier action."  Stewart v. Elliott, 239 P.3d 1236, 1240 (Alaska 2010).  "But if one was not a party to the earlier action, that non-party may nonetheless be bound if in privity with the party in the earlier action."  Id.

"In addition to the party/privity requirement, collateral estoppel requires that the judgment be final and on the merits; that the precluded issue be identical in both actions; and that the issue be essential to the final judgment in the first action."  Id. at 1241-42.  "In

---

[20]Id. at 4-11.

[21]Id. at 60.

addition, ... the issue to be collaterally estopped must have been 'actually and fully litigated in the first action.' In other words, the precluded party must have had 'a fair opportunity procedurally, substantively, and evidentially to contest the issue.'" Chilton-Wren v. Olds, 1 P.3d 693, 697 (Alaska 2000) (quoting Murray v. Feight, 741 P.2d 1148, 1153 (Alaska 1987)).

There is no dispute that the Arizona judgment is final and on the merits. There is also no dispute that the issues in this action are identical to those in the Arizona Action and that these issues were essential to the final judgment in the Arizona Action. The dispute here focuses on whether Muhs was in privity with PHP.

Under Alaska law, "[p]rivity exists where 'the non-party (1) substantially participated in the control of a party's presentation in the adjudication or had an opportunity to do so; (2) agreed to be bound by the adjudication between the parties; or (3) was represented by a party in a capacity such as trustee, agent, or executor.'" Stewart, 239 P.3d at 1241 (quoting Powers v. United Servs. Auto. Ass'n, 6 P.3d 294, 297–98 (Alaska 2000)). "Privity 'is a shorthand way of expressing assurance that the non-party has had adequate notice and opportunity to be heard, and that its rights and interests have been protected." Id. (quoting Alaska Foods, Inc. v. Nichiro Gyogyo Kaisha, Ltd., 768 P.2d 117, 121 (Alaska 1989)). "In effect, privity assures that it is fair to legally bind the non-party to the actions of the party in the earlier action." Id.

As set out above, Muhs represented to this court that the issues in this case and the Arizona Action were almost identical, and he expressly stated that if TKCA were to prevail in the Arizona Action, he would be collaterally estopped from arguing differently in this court. In other words, Muhs represented that he was agreeing to be bound by what happened in the Arizona Action. Muhs, however, argues that he was not aware of the breadth and potential effect of his former counsel's statements to this court. Muhs offers his declaration in support of this argument. Muhs avers that he

> was told and I believed that nothing that was done, agreed to, or said in the Arizona Matter would damage my case in Alaska. I was told and believed I would still be able to defend myself in Alaska, including conducting discovery, but some parts of the Arizona Matter might be used in Alaska as evidence.[22]

Muhs further avers that he "recognize[s] that my former attorneys made statements regarding the applicability of the Arizona Action to this matter, but I was unaware of the scope, breadth and potential effect of those statements."[23] Muhs also avers that he

> never knowingly agreed to be bound by the results in the Arizona Action and thereby take away my ability to argue my case in Alaska. Everything I agreed to and anything I signed, was done because I was told it was necessary for the trial in Arizona to move forward. I would not have agreed to or

---

[22]Muhs Declaration at 3, ¶ 5, Exhibit 1, Defendant's Response in Opposition to Plaintiff TKC Aerospace, Inc.'s Motion for Summary Judgment, Docket No. 292.

[23]Id. at 4, ¶ 9.

signed anything that I knew would take my ability to defend myself away.[24]

Muhs also avers that he "retained the legal services of Dickstein Shapiro ... to represent me in my role as solely a witness in the Arizona Action.[25]  Although for a time Dickstein Shapiro was my counsel in this matter, it was always my understanding that I was being represented as a witness."[26]

Muhs argues that his declaration makes clear that he never intended to relinquish his rights to a trial or to conduct discovery in this matter.  Muhs points out that while "courts look with favor on stipulations designed to simplify, shorten or settle litigation, or to save costs, they "will not give such stipulations a forced construction" or "construe [a] stipulation to waive rights not plainly intended to be relinquished." DeNardo v. Calista Corp., 111 P.3d 326, 332 (Alaska 2005) (citations omitted).  Thus, Muhs argues that his attorneys' statements should not be construed to mean that he relinquished his rights to a trial or to conduct discovery in this case.

---

[24]Id. at 5, ¶ 15.

[25]This averment is in direct conflict with the fact that three Dickstein Shapiro lawyers applied for permission to appear and participate as co-counsel for Muhs in this case. Docket Nos. 23-25.

[26]Muhs Declaration at 2, ¶ 3, Exhibit 1, Defendant's Response in Opposition to Plaintiff TKC Aerospace, Inc.'s Motion for Summary Judgment, Docket No. 292.

Muhs also argues that his counsel's statements should give way to his due process rights. Muhs contends that the Supreme Court has made clear that sometimes application of collateral estoppel violates due process. He cites to <u>Blonder Tongue Laboratories, Inc. v. University of Illinois Foundation</u>, 402 U.S. 313 (1971), in support of this contention. There, the Court observed that

> [s]ome litigants—those who never appeared in a prior action—may not be collaterally estopped without litigating the issue. They have never had a chance to present their evidence and arguments on the claim. Due process prohibits estopping them despite one or more existing adjudications of the identical issue which stand squarely against their position.

<u>Id.</u> at 329. Muhs argues that this is a case in which due process should prevent resolving this matter through collateral estoppel because TKCA is asking the court to enter judgment against him in excess of twenty million dollars without allowing him the opportunity to develop evidence. Muhs also argues that to bind him to the outcome of the Arizona Action would violate his due process rights because while he had involvement in the Arizona Action, it was only as a witness and not as a party. As a witness, he contends that he never had the right to call his own witnesses, conduct discovery, or otherwise assert a defense. Thus, he argues that he never received a fair hearing on the claims asserted against him by TKCA and that he should be allowed such a hearing now. Muhs now argues that while the discovery conducted by PHP in the Arizona Action might have been similar to discovery Muhs would conduct in this matter, it was not identical. For example, Muhs avers that he

will seek discovery from and call as witnesses "Mike Weems, Brian Blake, Ron Lee and Robert Kessler[,]"[27] who were presumably not witnesses in the Arizona Action. Muhs also contends that he will retain experts in the area of government contracts in order to demonstrate the effect of TKCA's decision to not bid on the Dash 8 solicitation and that he will also seek discovery of documents from the DoS to demonstrate that TKCA's decision not to bid had little to do with his actions. Muhs reminds this court that the Alaska Supreme Court has "recognized that it is not always possible to resolve a case through collateral estoppel, even if that case arises from the same underlying facts and theory as prior litigation." <u>Powercorp Alaska, LLC v. Alaska Energy Auth.</u>, 290 P.3d 1173, 1182 (Alaska 2012). And he insists that this is one of those times.

This court disagrees. Muhs is equitably estopped from now asserting that he did not understand that he was agreeing to be bound by whatever happened in the Arizona Action.

> Alaska recognizes two separate estoppel doctrines. The elements of equitable estoppel are the assertion of a position by conduct or word, reasonable reliance thereon by another party, and resulting prejudice. Neither ignorance nor reliance, however, are essential elements of quasi estoppel. Quasi estoppel appeals to the conscience of the court and applies where the existence of facts and circumstances mak[es] the assertion of an inconsistent position unconscionable. This court has instructed trial courts to consider the following factors in determining whether the doctrine of quasi estoppel

---

[27]<u>Id.</u> at 3, ¶ 10.

> is applicable: whether the party asserting the inconsistent position has gained an advantage or produced some disadvantage through the first position; whether the inconsistency was of such significance as to make the present assertion unconscionable; and, whether the first assertion was based on full knowledge of the facts.

Wright v. State, 824 P.2d 718, 721 (Alaska 1992) (internal citations omitted). Either doctrine applies here. Equitable estoppel applies because TKCA reasonably relied on Muhs' numerous assertions that the Arizona decision would bind the parties in this case and TKCA would be prejudiced if it were to have to retry this case now.

Quasi estoppel also applies because Muhs gained an advantage by representing that he would be bound by the Arizona Action and allowing him to change course now would be unconscionable. Muhs' former counsel formally appeared for him and thus "was authorized to speak and act for him." Lane v. Ballot, 330 P.3d 338, 342 (Alaska 2014). Muhs' counsel represented to this court that Muhs agreed to be bound by whatever happened in the Arizona Action. The court simply must be able to rely upon commitments of counsel made on behalf of their clients in answers, motion papers, and procedural matters such as the interrelationship between the Arizona Action and this case. If parties are free to question or challenge decisions made by counsel in the course of litigation after the court has received and relied upon representations of counsel, the court's ability to effectively manage litigation would be very substantially degraded. Indeed, there would

need to be a wholesale revision of the way in which the court and counsel for parties interact.

In short, Muhs agreed to be bound by the decision in the Arizona Action and thus he was in privity with PHP. Because Muhs was in privity in with PHP, Muhs is collaterally estopped from relitigating TKCA's claims against him.[28]

If the court decides that collateral estoppel applies here, which it has, Muhs argues that it should only apply to liability and that he should still have an opportunity to conduct discovery as to whether TKCA's damages were proximately caused by his conduct. Muhs contends that given the enormity of the judgment that TKCA seeks to have entered against him and the fact that TKCA already has a judgment in excess of $20 million against PHP, he should be permitted to conduct discovery to ensure that damages are not assessed against him for the actions of PHP or for conduct for which TKCA has already been compensated.

Muhs, however, represented to this court that "the alleged damages [in the two actions] are the same";[29] that "the liability and damage components of the two actions are

---

[28]Because the court concludes that Muhs agreed to bound by the outcome of the Arizona Action, the court need not consider TKCA's argument that Muhs substantially participated in the control of PHP's defense. The court also need not consider TKCA's alternative motion for sanctions.

[29]Memorandum of Law in Support of Defendant's Motion for a Temporary Stay at 4, Docket No. 62.

more than 'sufficiently parallel';[30] that the "damages are essentially identical in both cases;"[31] and that "[a] resolution of the Arizona Action in TKCA's favor will dispose of any remaining liability and damage questions in the Alaska Action...."[32] Thus, Muhs' contention that the damages that were decided in the Arizona Action might not be attributable to him is meritless. Muhs is collaterally estopped from relitigating both liability and damages, and TKCA is entitled to summary judgment as to both liability and damages.

TKCA also contends that it is entitled to its attorney fees and expenses. First, TKCA argues that Muhs is liable for the attorney fees and expenses that it has incurred in this case. The court will entertain TKCA's motion for an award of attorney fees and expenses incurred in connection with this case. Such motion shall be filed on or before November 23, 2015.

Second, TKCA argues that Muhs is liable under his employment agreement for its attorney fees and expenses incurred in the Arizona Action. Muhs' employment agreement provides:

---

[30]Id. at 12.

[31]Reply Memorandum of Law in Support of Defendant's Motion for a Temporary Stay at 6, n.3, Docket No. 75.

[32]Id. at 9-10.

> If Executive breaches any of the covenants set forth in Paragraph 6, 7 or 8 of this Agreement, Executive agrees to pay all costs (including reasonable attorney's fees) incurred by the Company in establishing that breach and in otherwise enforcing any of the covenants or provisions of this Agreement.[33]

TKCA contends that this provision is broad enough to encompass its attorney fees and costs in the Arizona Action and argues that had it not established that Muhs breached his agreement in the Arizona Action, it would have had to do so here. Thus, TKCA insists that Muhs is liable for the Arizona attorney fees ($4,596,865.06) and taxable costs ($113,321.37).

TKCA has offered no authority that suggests that Muhs' employment contract should be interpreted to include attorney fees directed at establishing Muhs' liability but incurred in litigation in which he was not a named party. The court had substantial doubt that Muhs' employment contract is broad enough to cover such fees. With what is presently before it, the court denies TKCA's request for fees incurred in the Arizona Action. The court will, however, reconsider the matter if TKCA can offer any authority to support its contention that it is entitled to the fees incurred in the Arizona Action.

Next, there is the matter of Muhs' stay request. Muhs argues that if the court decides that TKCA is entitled to summary judgment, it should stay the current matter until the appeal filed by PHP in the Arizona Action is decided.[34] If PHP's appeal is successful,

---

[33]Exhibit A at 10, ¶ 9, Verified Complaint, Docket No. 1.

[34]PHP filed Chapter 11 bankruptcy on September 18, 2015, so any appeal is
(continued...)

in whole or in part, the judgment on which TKCA is basing its current motion for summary judgment will be vacated in whole or in part. If this were to happen, Muhs argues that an incongruous result would occur: the judgment against PHP would be vacated and yet the judgment against him would still exist.

The court is not inclined to leave this matter open until an Arizona appeal and bankruptcy proceeding are concluded, but there are other ways for the parties to deal with the problem which would arise if the Arizona judgment were to be reversed. For example, a protective notice of appeal could be filed in this case and held in abeyance pending resolution of the Arizona appellate proceedings. Or, the parties could agree that judgment in this case be reopened if an Arizona appeal is successful, agree not to execute on this court's judgment, and this court could retain jurisdiction of this matter for purposes of post-judgment proceedings in the event that the Arizona judgment were to be reversed. The parties can and should consider an appropriate post-judgment agreement with respect to the foregoing matters, which the court will take up at the same time it is finalizing a judgment in this case.

Finally, there is the matter of the relief to which TKCA is entitled. What follows is this court's tentative view of what the final judgment in this case should be:

---

[34](...continued)
presumably now stayed.

As to TKCA's claims under Count I (breach of contract), Count II (breach of implied covenant of good faith and fair dealing), Count III (breach of fiduciary duty), and Count V (tortious interference with prospective economic benefit), TKCA is entitled to judgment against Muhs for lost profits in the amount of $2,883,055.86.[35]

As to TKCA's Count IV (unjust enrichment) and Count VI (fraud), the court has entered summary judgment in favor of Muhs,[36] and these claims are dismissed with prejudice.

As to TKCA's Count VII (Alaska Trade Secret Acts), TKCA is entitled to judgment against Muhs in the amount of:

    a.    Lost Profits: $2,883,055.86

    b.    Research and Development: $3,882,205.00

    c.    Exemplary Damages: $13,530,521.72[37]

TKCA is entitled to taxable costs of $_____ and attorney fees and non-taxable costs in the amount of $_____.

---

[35]TKCA's prayer for relief did not include a request for punitive damages.

[36]Docket No. 195.

[37]Per AS 45.50.915(b).

The judgment shall bear interest at _____% per annum from the date of this judgment until paid.

The court retains jurisdiction of this case for purposes of reviewing the court's order of _____ and this judgment in the event that the judgment in favor of TKCA in the Arizona Action is reversed on appeal.

Conclusion

TKCA's motion for summary judgment is granted. TKCA is granted summary judgment as to its remaining claims against Muhs. As set out above, TKCA may serve and file a motion for attorney fees and costs incurred in this action. And, TKCA shall serve and file a proposed judgment on or before November 23, 2015. Muhs shall respond on or before December 7, 2015; and any reply by TKCA shall be served and filed within seven days of Muhs' response.

DATED at Anchorage, Alaska, this 22nd day of October, 2015.

/s/ H. Russel Holland
United States District Judge